727 S.E.2d 855

**Constance Lourenda MAYLE,
Respondent Below,
Petitioner**

v.

**Mark Douglas MAYLE, Petitioner
Below, Respondent.**

**No. 11–0344.**

Supreme Court of Appeals of
West Virginia.

Submitted April 10, 2012.

Decided June 8, 2012.

---

William L. Frame, Esq., Wilson, Frame, Benninger & Metheney, PLLC, Morgantown, WV, for Petitioner.

Amber Urtso Sellaro, Esq., Sal, Sellaro, Stephens, DeVall & Culpepper, PLLC, Morgantown, WV, for Respondent.

PER CURIAM:

The petitioner, Constance Lourenda Mayle (hereinafter "petitioner" or "Mrs. Mayle") appeals from the order of the Circuit Court of Monongalia County entered January 21, 2011, which affirmed the order of the Family Court of Monongalia County entered December 6, 2010. The family court order awarded the petitioner rehabilitative alimony or spousal support in the amount of $1,500 per month for six months and permanent spousal support in the amount of $5,500 per month for ten years, after which the amount would be reduced to $1,500 per month. The family court order denied the petitioner's request for reimbursement spousal support and her request for attorney fees and costs.

The petitioner challenges the amount of the spousal support, the reduction of the spousal support after ten years as well as the lack of an award of attorney fees and costs. While we conclude that there was no error in the award of rehabilitative spousal support for six months or in the amount of the permanent spousal support for the first ten years, we find that the circuit court and family court were clearly wrong in reducing the amount of spousal support to $1,500 after ten years. In addition, we find that the lower courts erred in denying the petitioner's request for reimbursement of attorney fees. We therefore affirm, in part, reverse, in part and remand this case for further proceedings as detailed herein.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The petitioner and Mark Douglas Mayle, (hereinafter "respondent" or "Dr. Mayle"), were married on February 18, 1984. Three children were born of this marriage, all of whom were emancipated by the time of the final hearing.[1] During the parties' early married years, they were recent college graduates who both worked, earning approximately the same amount of money. Newly into their marriage the petitioner and respondent agreed that the husband would return to West Virginia University to take the prerequisite classes needed to enter medical school. During this time period and while Dr. Mayle was in medical school, the peti-

---

1. The parties did not appear to quarrel over their children's needs during the pendency of their separation and this divorce proceeding. All parenting issues were resolved by agreement.

tioner worked outside of the home. In addition, the petitioner's parents provided substantial financial support to the family, whose number had grown to include two children.[2] By the time the respondent completed his formal medical education, the parties' family had expanded to three children. At this time the petitioner and respondent decided that Mrs. Mayle would leave the workforce and become a full-time homemaker and caretaker for the children.

Dr. Mayle began practicing ophthalmology in Morgantown. The parties accumulated marital assets, including residential real estate, investments, personal property, a vacation cabin, retirement accounts and other items. The respondent's income continued to grow; at the time of the parties' separation his yearly income was in excess of $300,000 per year.

The petitioner and respondent separated in August of 2007, after the respondent's alleged extramarital affair[3] was revealed to the petitioner. They remained separated for approximately three years before formal divorce proceedings were instituted in the Family Court of Monongalia County. During the parties' separation, the husband gave his monthly paycheck to his wife, from which she paid marital bills, maintained the household and took care of the children, including paying for the youngest child's private high school tuition and assisting the older children who were in college. The family court order stated that during this time the petitioner and respondent "continued to co-mingle their financial affairs" up to the date of the final hearing. These payments were in lieu of a formal child support and formal spousal support award. The respondent supported himself during this time using other income, including the money from his part-time job performing refractive eye surgery for anoth-

er practice and living off of the parties' investments.

The matter proceeded to hearing on the unresolved issues of equitable distribution and spousal support. In terms of distribution of the parties' marital property, the family court ordered the equitable distribution of the parties' marital estate, including awarding the marital home and indebtedness associated therewith to the petitioner and equally splitting the parties' retirement accounts. The family court recognized that the equitable distribution was not completely equal and declared that the respondent was owed the amount of $24,919.50 by the petitioner to make even the equitable distribution. This amount was not reduced to judgment. Instead, the family court order provided that this amount should be offset "based upon the wife and her family's past contributions as well as the other equities involved in the present case."

In terms of spousal support, the family court found that the petitioner was entitled to permanent spousal support because of the duration of the parties' marriage and the respective financial circumstances and needs. The family court concluded that spousal support was necessary and appropriate to address financial inequities between the parties which were related to the marriage, including the past decision regarding Mrs. Mayle's leaving the workforce to care for the children. While the petitioner had claimed monthly expenses totaling $10,000 to $12,000, the family court revised those expenses to what it claimed was a more realistic $6,295. On the basis of these revised expenses, and imputing income to the petitioner, who was unemployed, the family court rejected the petitioner's request for spousal support in the amount of $12,000. The family court did award permanent spousal support in the monthly amount of $5,500 and additional re-

---

2. The family court found that the amount of money contributed to the parties by Mrs. Mayle's parents, including interest, was $88,207.00. The parties executed a note payable to petitioner's parents, and the family court found that there was a "reasonable expectation the parties were obligated to repay the parents for the sums advanced."

3. The parties separated one other time in their marriage because of the respondent's alleged infidelity. During this separation the petitioner left Morgantown with the children and returned to Charleston, enrolled in graduate school and looked for work. The parties eventually reconciled and the petitioner returned to Morgantown with the children and reunited with the respondent.

habilitative support in the monthly amount of $1,500 for a period of six months. The family court rejected the petitioner's claim for reimbursement spousal support for the moneys she and her family paid toward the respondent's medical education, finding that such costs were "somewhat remote in time." The family court found that "the Wife has enjoyed significant benefits by virtue of her husband's employment over the past 18 years, including her standard of living, the accumulation of significant assets, and the Husband's current ability to provide support to the Wife in the future."

The family court order gave little weight to the respondent's fault in causing the dissolution of the marriage, although it noted that the petitioner's claim had some merit. The family court found that the respondent had been providing significant and regular support during the parties' separation, had lived modestly over the past three years and had given most of his income to the petitioner. The family court found that the amount of past support "is probably in excess of what this Court might have ordered if the parties had filed for divorce" when they separated.

The family court ordered the respondent to pay Mrs. Mayle permanent spousal support in the amount of $5,500 per month, with an additional $1,500 per month for six months designated as rehabilitative support. After a period of ten years, the family court ordered that the monthly spousal support be reduced to $1,500 per month, continuing until the petitioner's remarriage, engaging in a de facto [4] marriage or as otherwise provided under West Virginia law. The family court's reasons for this reduction were as follows:

> This is essentially a 21 year marriage. While the parties were married 26 years at the time of the final hearing there were two lengthy separations prior to the final hearing totaling 4–5 years. The parties' children are grown. The Wife appears in good health, very smart and organized, reasonably well educated, and with a good head for business per her training and prior work experience. While the Wife has been out of the workforce for a lengthy period, the Court believes the Wife has abilities that will eventually make her successful. It appears the Wife's family has two businesses in Charleston. It seems a distinct possibility the Wife may eventually relocate to Charleston since that is what she did during the parties' first separation. It may be that she could assume a greater role in the family business. Regardless, the Court is convinced the Wife can be successful in beginning a career in what remains of her working life. The Court also is inclined to believe that the Wife will reduce her current living expenses over time. While the Court believes it is reasonable that the Husband continue to provide at least a modest amount of support to help the Wife as she gets older, at some point one must conclude that the Husband has otherwise satisfied any obligation to the Wife by virtue of the marriage. The Court notes that over the next ten years per this Order, the Husband will pay the Wife over $700,000 in support.

Further, the family court order stated:

> Based upon the foregoing findings, the Court believes that after ten years it is not unreasonable to expect the Wife to assume a greater responsibility for her support. Accordingly, the Court Orders that effective December 1, 2020, the Husband's spousal support obligation shall be reduced to $1,500 per month.

The petitioner appealed the family court's order to the Circuit Court of Monongalia County, arguing that the family court erred in the amount, duration and type of spousal support as well as the failure to award attorney fees and costs. In its order entered January 21, 2011, the circuit court affirmed the family court's order. The circuit court found that the family court appropriately examined the factors upon which spousal support is based, including the length of the marriage (twenty-three years), the age of the parties (forty-eight), the sporadic work history of Mrs. Mayle and the current disparate earnings of the parties. Noting that "[a]s such, while the award may at first blush seem inadequate, the Court finds that the

---

4. A de facto marriage is defined by W. Va.Code, § 48–5–707 (2001) and is discussed more fully in Wachter v. Wachter, 216 W.Va. 489, 607 S.E.2d 818 (2004).

Family Court took great pains to explain the reasoning" that went into the award, and that there was no abuse of discretion by the family court. On the issue of attorney fees, the circuit court agreed with Dr. Mayle's argument that the $20,000 was unreasonable and affirmed the lower court's rejection of the fee request.

## II.

## STANDARD OF REVIEW

■ The petitioner's appeal is from an order of the circuit court that affirmed the underlying order of the family court. We have held that:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

■ Further, in reviewing the issue of the alimony awarded to the plaintiff, this Court accords much deference to the circuit court's decision. Syllabus Point 3 of *Sellitti*

*v. Sellitti*, 192 W.Va. 546, 453 S.E.2d 380 (1994), states:

> ' " 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus Point 2, *Lambert v. Miller*, 178 W.Va. 224, 358 S.E.2d 785 (1987).' Syllabus Point 2, *Whittaker v. Whittaker*, 180 W.Va. 57, 375 S.E.2d 421 (1988).

Based upon these well-established standards of review, we address the merits of the petitioner's appeal.

## III.

## DISCUSSION

### A. Spousal Support

■ Mrs. Mayle sought an award of permanent spousal support in the amount of $12,000 per month. The family court awarded $5,500 per month permanent spousal support for a period of ten years, with that amount being reduced to $1,500 per month thereafter. The family court also awarded $1,500 per month rehabilitative spousal support for a period of six months.

Under W. Va.Code § 48–6–301(b) [5], there are 20 items that must be considered in

---

5. W. Va.Code § 48–6–301 provides, in relevant part, as follows:

(b) The court shall consider the following factors in determining the amount of spousal support, child support or separate maintenance, if any, to be ordered under the provisions of parts 5 and 6, article five of this chapter, as a supplement to or in lieu of the separation agreement:
(1) The length of time the parties were married;
(2) The period of time during the marriage when the parties actually lived together as husband and wife;
(3) The present employment income and other recurring earnings of each party from any source;
(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;
(6) The ages and the physical, mental and emotional condition of each party;
(7) The educational qualifications of each party;
(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

determining the amount of spousal support awarded. The family court's order indicates that these factors were considered. The family court's order thoroughly details the review of these factors. It is also clear in the family court's order that the family court discounted some of the petitioner's expenses and her claimed monthly needs, and instead substituted what it deemed to be amounts more realistic to typical monthly expenditures.

We have held that on the issue of the amount of spousal support, deference should be given to the family courts. "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). The circuit court gave appropriate deference to the family court's ruling on spousal support and affirmed the amount, the nature and the length of the award, including the automatic reduction of the amount in ten years.

We too must give appropriate deference to the family court's determination of the amount, nature and duration of the spousal support. The family court clearly reviewed the statutory factors in making this award. We see no error in the family court's award, and the circuit court's affirmation of the award, of $1,500 per month rehabilitative spousal support for six months. Likewise, the granting of permanent spousal support in the amount of $5,500 to the petitioner does

not appear to be an abuse of discretion. The family court's order, as well as the circuit court's order affirming that award, is well-reasoned and supported by the evidence.

Where we disagree with the lower court's decision is in the reduction of the petitioner's spousal support after a period of ten years. In its order, the family court based its order reducing the amount of spousal support to $1,500 after a period of ten years on speculative events that may or may not happen. The findings include the conjecture that at some point in the future the petitioner may return to her hometown of Charleston, West Virginia. The findings continue with the suggestion that perhaps the petitioner will assume a greater role in the operation of her family's business enterprise. There was, however, nothing elicited in the hearing that would support this speculation on the part of the family court. While these types of happenings could be the basis of a petition for modification of the amount of the spousal support, it was error for the family court to issue what appears to be a preemptive modification without sufficient evidence. This is not to say that there are not reasons that a spousal support award could be reduced after a period of time; in the case before us, there is simply no evidence upon which the family court could base its order of reduction. The family court was clearly wrong in reducing the spousal support without any evidence in support of that reduction.

We find, therefore, that while the nature of the spousal support awarded and the monthly amount of $5,500 was not in error, it was

(9) The standard of living established during the marriage;
(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;
(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;
(13) The costs of educating minor children;
(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;
(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
(17) The financial need of each party;
(18) The legal obligations of each party to support himself or herself and to support any other person;
(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

clearly wrong for the spousal support amount to be reduced to $1,500 after a period of ten years where there was no evidence to support such a reduction. We reverse the lower courts insofar as the monthly spousal support was reduced effective December 1, 2020.

### B. Attorney fees and costs

■ The petitioner requested an award of fees and costs from the respondent in the amount of $20,000, with an additional $2,000 incurred in costs. The petitioner's attorney charged a flat fee of $20,000, without regard to the actual number of hours worked or an hourly charge. Neither the family court nor the circuit court awarded the petitioner her requested attorney fees and costs. The family court found that the wife had sufficient assets awarded to her with which to pay her own attorney fees. Further, the family court found that neither party had acted in bad faith during the course of these proceedings. The family court also noted that the petitioner's requested attorney fees were significantly greater than the $6,500 in fees incurred by the respondent.

In its order affirming the family court's denial of fees, the circuit court found that the flat-fee arrangement with petitioner's counsel was not reasonable, and that the family court's cited reasons for failing to award any fees and costs were correct. The circuit court order detailed the factors enumerated by this Court in *Pearson v. Pearson*, 200 W.Va. 139, 488 S.E.2d 414 (1997), although the family court order did not focus on all of the listed factors. The family court's focus, as noted, was on the fact that there was no bad faith on the part of either party during the course of the litigation, that the respondent's fees were far less than those requested by the petitioner and that the petitioner had sufficient assets from which to pay her fees.

Our law is well settled in regard to the payment of attorney fees and costs. The lower court's decision to award fees and costs is discretionary. W. Va.Code § 48–5–611 (2001) specifically authorizes the payment as follows:

(a) Costs may be awarded to either party as justice requires, and in all cases the court, in its discretion, may require payment of costs at any time and may suspend or withhold any order until the costs are paid.

(b) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action. An order for temporary relief awarding attorney's fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.

(c) When it appears to the court that a party has incurred attorney's fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney's fees and costs to the other party.

■ While the award of fees is discretionary, we have provided guidance for family and circuit courts in making these awards. We have held:

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and

the reasonableness of the attorney's fee request.

Syl. pt. 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

In the case *sub judice*, the family court did not appear to analyze these factors when determining whether to award the petitioner attorney fees. The circuit court enumerated these factors, but likewise, did not apply these factors to the facts before it on review. While the awarding of fees and costs is discretionary, we review these awards for an abuse of discretion. Syl. pt. 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Where this case turns is on the disparity between the income of the petitioner and the income of the respondent. The petitioner was awarded an equal share of the marital estate, but this was largely composed of the marital residence. As hereinbefore noted, the petitioner was not employed at the time of these proceedings and had not been in the workforce for decades. The respondent enjoyed substantial income from his medical practice. Mrs. Mayle appears to be lacking the actual cash assets to pay attorney fees, without liquidating non-cash assets. The respondent, on the other hand, clearly had the present ability to contribute to the petitioner's attorney fees and costs. We find that the lower courts' failure to award some measure of fees to the petitioner is an abuse of discretion. Neither court appropriately analyzed the factors enumerated by this Court in the *Banker* case. We therefore remand this case for an award of attorney fees and costs, using the appropriate standards as hereinbefore designated.

## IV.

### CONCLUSION

For the foregoing reasons, the order of the Circuit Court of Monongalia County entered January 21, 2011, is affirmed, in part, reversed, in part and remanded. The order is affirmed insofar as it awarded permanent spousal support in the monthly amount of $5,500. The order is reversed insofar as it reduced the monthly amount of spousal support to $1,500 after ten years. The order is reversed insofar as it denied the petitioner's request for attorney fees from the respondent, and remanded for further proceedings consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.

Justice WORKMAN concurs and reserves the right to file a concurring opinion.

WORKMAN, Justice, concurring:

I concur with the result reached by the majority regarding rehabilitative alimony, permanent spousal support and attorney fees and costs.

I write separately to focus on a principle of law that has been clearly stated by this Court since 1996, but which seems to frequently be ignored by domestic relations attorneys and judges. As we set fourth in syllabus point four of *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996), and which the majority correctly reiterates in the opinion::

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, *the degree of fault of either party making the divorce action necessary,* and the reasonableness of the attorney's fee request.

196 W.Va. at 538, 474 S.E.2d at 468 (emphasis added). In reaching this holding in *Banker,* the Court stated that

> [t]he circuit court's determination to deny the defendant attorney's fees and expert witness fees was narrowly focused upon the relative financial parity in the distribution of marital assets. The determination of this issue is to be accorded far greater scope than that given by the circuit court. The evidence is sufficient to

support a finding that this marriage would not have been brought to this point but for the plaintiff's continued affairs with his former secretary. Furthermore, the evidence in this case reveals incontestably that the defendant entered this proceeding with clean hands. In divorce cases, the "fault" factor is premised upon the notion that it is unfair to force a litigant to pay for the cost of litigation that is wholly caused by the misconduct of the opposing party. *Yet, neither the family law master nor the circuit court gave "fault" any reasonable or fair consideration.* Thus, we find the failure to give sufficient consideration to a significant factor constitutes an abuse of discretion requiring a remand for further consideration. Upon remand, it must be determined whether the defendant is entitled to have the reasonable cost of her attorney's fees and expert witness fees, including the cost of prosecuting this appeal, but only after considering all the appropriate factors, including the fault of the plaintiff.

*Id.* at 550, 474 S.E.2d at 480 (emphasis added).

Later that same year, in *Rogers v. Rogers,* 197 W.Va. 365, 475 S.E.2d 457 (1996), this Court held in syllabus point four that

[i]n appropriate circumstances, an enhancement of an award of maintenance/alimony based on the degree of fault is justified. Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that contributed to the dissolution of the marriage. In determining an award *of maintenance/alimony enhanced by a fault premium, the circuit court must* consider the concrete financial realities of the parties.

197 W.Va. at 367, 475 S.E.2d at 459.

Yet in case after case, that principle is ignored. Although in many divorce cases, there may be insufficient income and assets to make a premium alimony award based on aggravated fault, in many (such as the instant one), there is significant income from which such an award can be made.

Because this case is being remanded for consideration of an attorney's fee and costs award, I want to reiterate this Court's well-established case law regarding consideration that should be given to the fault of either party in causing the dissolution of the marriage.

In the instant action, despite evidence that the divorce was due to the extramarital affairs of the Respondent husband, neither the family court nor the circuit court awarded any attorney's fees and costs to the Petitioner. Rather, the family court only considered the fault of the Respondent husband as follows: "The Wife has alleged fault on the Husband's part as an additional factor in granting her request for alimony. While there is some merit to the Wife's claim, the court does not give significant weight to the fault on the Husband's part. . . ."

Concerning attorney's fees, the family court determined that the Petitioner had sufficient assets awarded to her with which to pay her own attorney's fees, that neither party had acted in "bad faith" during the proceedings, and that the Petitioner's fees were "significantly greater" than the Respondent's fees. The circuit court, in its Order affirming the family court, made similar conclusions.

While the divorce was granted based on irreconcilable differences, evidence and argument on the issue of the parties' fault was introduced and heard. On appeal, the Petitioner argued that the breakdown of the marriage was the direct result of her inability to forgive the Respondent for a third infidelity. Further, the Petitioner had, by agreement of the parties, given up her career in 1992 to be a full-time homemaker and mother to three children.

Contrary to the family court's and circuit's courts conclusions, although how the parties' conduct themselves during the proceedings may be relevant, the lower courts' focus on how the parties behaved during the proceed-

ings in this case is simply not what is at issue. The lack of consideration by the family court and circuit court to the issue of marital misconduct in bringing about the need for a divorce action is the problem in this case. *Banker,* 196 W.Va. at 538, 474 S.E.2d at 468. Succinctly stated, but for the Respondent's repeated extra-marital affairs, the Petitioner would not have had to hire a lawyer and incur attorney's fees and costs to pursue a divorce action. On remand, due consideration should be given to the "degree of fault of either party making the divorce action necessary." *Id.*

For the foregoing reasons, I respectfully concur.