# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Robert M., Petitioner**

**vs)  No. 13-0879** (Kanawha County 09-D-2302)

**Jessica M., Respondent**

**FILED**

June 13, 2014

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert M.[1] ("Petitioner Father") by counsel Lyne Ranson, appeals the July 8, 2013, order of the Circuit Court of Kanawha County affirming an order of the Family Court of Kanawha County that denied his motion for immediate return of his minor child to West Virginia and for modification of the parenting plan and transfer of custody following Respondent Jessica M.'s ("Respondent Mother") relocation to Wisconsin with the child. Respondent Mother, by counsel Chelsea Walker-Gaskins, filed a response to which petitioner replied. Guardian ad litem Sharon K. Childers filed a summary response in support of the circuit court's order to which petitioner also replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married on April 5, 2006. One child, T.M., was born unto the marriage on March 26, 2009. The parties divorced on April 17, 2009.

Respondent Mother has consistently been T.M.'s primary residential caretaker.  By order entered June 21, 2012, the family court designated Respondent Mother as the child's primary residential parent. Petitioner Father was awarded unsupervised parenting time that included specified weeknights, weekends, and holidays.[2]

---

[1] As is our customary practice in domestic relations cases involving minors, we refer to the parties by using only the first initial of their last names and refer to the children by using only their initials. *See, e.g., In re Emily B.,* 208 W.Va. 325, 329 n.1, 540 S.E.2d 542, 546 n.1 (2000).

[2] As explained by the guardian ad litem in the present appeal, Petitioner Father had unsupervised parenting time prior to late 2011. In her summary response filed with this Court, the guardian states that, in late 2011, Petitioner Father's parenting time was terminated after Respondent Mother filed an emergency motion

On July 26, 2012, Respondent Mother filed a Notice of Relocation, seeking court approval to relocate to Wisconsin to join her fiancé, who was transferred there after receiving a promotion and significant pay raise at work. Respondent Mother indicated that she planned to enroll at a nearby university and continue her employment with the same retail chain for which she worked in West Virginia. Respondent Mother's Notice of Relocation set September 30,

---

as a result of a mental health episode that occurred during the time he had [T.M.]. [Petitioner Father] suffered a couple of serious mental health episodes in September 2011, including holding a knife to his throat, while threatening to kill himself and his current wife. [He] voluntarily signed himself into Highland Hospital for a 72 hour period, per a mental hygiene order. These September episodes were most concerning to the mother because she found out through a third-party, several weeks later, causing her to file the emergency motion.

[Petitioner Father] has suffered anger outbursts to the point of blacking out, anxiety, depression, irritability, mood swings, and nightmares for years. According to my interviews with the father and various family members, he has suffered from mental health issues since high school.

The guardian further indicated that Petitioner Father has been hospitalized "for acute episodes of behavioral agitation with physical violence at home, tearing up the house, emotional dyscontrol, and passive suicide ideation." He has been diagnosed with PTSD, depression, and anxiety." She also noted that, in 2010, he was charged with domestic battery and destruction of property involving Respondent Mother. During this incident, he "lost control and became violent" while holding T.M., who was then twenty-one months old. According to the guardian, "[o]ne of the most concerning aspects is that [Petitioner Father] would go years without consistently and appropriately treating his mental health conditions[,]" and, further, he "has a history of poor parenting decisions affecting the welfare of his daughter and not properly treating his mental health and anger issues."

Notwithstanding the foregoing, the guardian indicated that the parenting schedule gradually moved from supervised to unsupervised and, by August of 2012, Petitioner Father was able to return to the original parenting schedule while continuing therapeutic treatment with his counselor and medication. When Respondent Mother filed her motion for relocation, the guardian conducted a thorough investigation and interviewed the parties. She recommended to the family court that the request for relocation be granted based upon, among other things, the fact that Respondent Mother "has been a stable, consistent, fit, primary caregiver for [T.M.] for her entire life[;]" that the request to relocate was not made in bad faith; and that Respondent Mother's fiancé received a significant promotion in Wisconsin and was a source of emotional and financial support to both Respondent Mother and T.M. The guardian specifically noted that she had no concerns that Respondent Mother would move away and deny T.M. contact with her father given that they had successfully followed all parenting schedules even though they did not get along. In her brief to this Court, the guardian reiterated her initial recommendation that relocation was in T.M.'s best interests "considering the totality of the circumstances and the parents' behavior, all the while ensuring [T.M.'s] safety while continuing parental relationships."

2

2012, as her date of relocation.[3]

On September 21, 2012, nine days before Respondent Mother's relocation date, Petitioner Father filed a Notice of Relocation Hearing and a hearing was scheduled for November 2, 2012.[4]

By order entered October 5, 2012, the family court granted Respondent Mother's request to move to Oak Creek, Wisconsin, and approved her proposed parenting plan. In its order, the family court specifically noted that "a period of sixty (60) days ha[s] passed and there were no objections filed by the [father] to the relocation nor did [Respondent Father] seek to schedule a hearing on the same until September 17, 2012, **53 days after the filing of the *Notice of Relocation*.**" (Emphasis in original). While acknowledging that, upon Petitioner Father's request, a hearing date of November 2, 2012, was set because that was the first date available to Petitioner Father's counsel, the family court determined that "[Petitioner Father] has been dilatory in his request for a hearing" and that "[Petitioner Father] should not be rewarded for his inaction." The family court further found that "the verified Petition for Relocation shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose[;] [t]hat no verified objections have been filed to challenge the assertions of the [mother] [;] [and] [t]hat [Respondent Mother] has submitted a proposed parenting plan . . . which actually proposes more parenting time to [Petitioner Father] than he currently receives."

Petitioner Father filed a motion to stay the order granting relocation on October 15, 2012, and on October 18, 2012, he filed a petition for appeal. On October 26, 2012, following a hearing, the circuit court entered an order reversing and remanding the order granting Respondent Mother's relocation on the ground that no testimony or evidence on Respondent Mother's relocation request was heard below and Petitioner Father had no opportunity to cross-examine her about the request.

Following remand, a hearing was conducted in family court on Respondent Mother's Notice of Relocation on November 28, 2012. Thereafter, by order entered December 19, 2012, the family court granted the relocation request.[5] Among other things, the order noted that Petitioner Father "failed to file, consistent with the relocation statute, a parenting plan consistent with the relocation of [Respondent Mother] with the subject child to the [S]tate of Wisconsin nor an alternative parenting plan consistent with the subject child remaining in the [S]tate of West Virginia and [Respondent Mother] moving to the [S]tate of Wisconsin, pursuant to W.Va. Code

---

[3] Petitioner Father's present counsel filed a Notice of Appearance on or about August 6, 2012, but did not file a response and objection to the notice of relocation until October 26, 2012.

[4] This date fell more than one month after Respondent Mother's scheduled date of relocation.

[5] We note that the incident of domestic violence involving the parties that occurred in 2010 and the 2011 incident resulting in Petitioner Father becoming the subject of a mental hygiene complaint were set forth in detail in the family court's December 19, 2012, order. *See* n.2, *supra.*

48-9-205." The family court further noted that the parenting plan Respondent Mother filed contemporaneously with her notice of relocation was "fair and equitable" and afforded Petitioner Father more parenting time than he received under a prior family court order entered on June 21, 2012. The family court also incorporated by reference the written report of the guardian ad litem, who recommended that the best interest of T.M. "would be represented by maintaining [Respondent Mother] as the primary residential custodian and granting [her] Motion to Relocate to Wisconsin with [T.M.]." The guardian ad litem further recommended that Petitioner Father "should have as much parenting time as possible, given the distance between the parties." Although the guardian's report opined that Respondent Mother's proposed parenting plan was "reasonable," it recommended additional parenting time with Petitioner Father.

Additionally, the family court order found Respondent Mother's relocation with T.M. to be for the legitimate purpose of being with their support network—i.e., Respondent Mother's fiancé and companion for more than two and one half years who was promoted by his employer to a management position in Wisconsin "with a substantial increase in income, benefits, and additional opportunities for upward management mobility in the company." The family court determined that Respondent Mother's fiancé was "a significant support network for her as she testified . . . that significant fundamental services have been cut off to her because of her inability to afford them as a result of her fiancé moving to Wisconsin. . . ."

Furthermore, the family court specifically found the relocation to be for a legitimate reason given that employment opportunities for Respondent Mother in her profession as a phlebotomist are "limited" in Charleston because the hours available are not conducive to child-rearing. Respondent Mother proved to the family court by a preponderance of the evidence that there are phlebotomy jobs available in Milwaukee, Wisconsin, that would allow her to work more traditional hours while T.M. was in daycare. Respondent Mother testified that the numerous retail jobs she has held were only temporary in nature until she is able to find a phlebotomy position in Wisconsin. The family court "commend[ed] [Respondent Mother] for engaging in retail [work], temporary or otherwise, as it shows her serious work ethic." The family court concluded that Respondent Mother "has proven by a preponderance of the evidence of the legitimacy of 'any other purpose,' which is to be with her fiancé who supports her substantially and to pursue significant employment opportunity in another location." Petitioner Father filed a motion to stay the order and a petition for appeal. In December of 2012, Respondent Mother moved to Wisconsin with T.M.

Petitioner Father appealed the family court's order to the circuit court and also filed a motion to stay the order pending the outcome of the appeal. Following a hearing on January 10, 2013, the circuit court denied Petitioner Father's motion to stay and deferred consideration of the petition for appeal. The circuit court also directed the parties to attempt to resolve their outstanding disagreements. With input from the guardian ad litem, a revised parenting plan was agreed upon and submitted to the circuit court. On February 12, 2013, the circuit court entered an agreed order that included a revised schedule for Petitioner Father's visitation and parenting time based upon the child's relocation to Wisconsin. The petition for appeal was dismissed, with prejudice.

On March 29, 2013, Petitioner Father filed the instant motion for immediate return of the

4

child to West Virginia and modification of the parenting plan and custody, requesting that the order granting relocation be vacated based upon Respondent Mother's failure to marry her fiancé in March of 2013. Petitioner Father alleged that the relocation was not in good faith and was based on a "sham."[6] Petitioner Father requested an immediate hearing.[7] By order entered April 10, 2013, the family court denied Petitioner Father's motion finding that "there has been no substantial change of circumstances. The Court's previous decision was not predicated upon the upcoming marriage of the mother, but rather the significance of the relationship, and the support provided through that relationship."

Petitioner Father appealed the family court's April 10, 2013, order to the circuit court and also filed a Rule 60(b) motion to set aside the order. By order entered June 24, 2013, the circuit court denied Petitioner Father's petition for appeal and affirmed the order of the family court.[8] This appeal followed.

Our review of the circuit court's order is governed by the following standard:

> "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo." Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

Syl. Pt. 1, *Mayle v. Mayle*, 229 W.Va. 179, 727 S.E.2d 855 (2012).

Petitioner Father raises several related assignments of error. The crux of his argument is that Respondent Mother's failure to marry her fiancé in March of 2013 after she was permitted to relocate with T.M. to Wisconsin and after entry of the parenting order constituted a substantial change of circumstances under West Virginia Code § 48-9-401(a). West Virginia Code § 48-9-401(a) provides as follows:

> Except as provided in section 9-402 [§ 48-9-402] or 9-403 [§ 48-9-403], a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated therein, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

*See* Syl. Pt. 3, *Skidmore v. Rogers,* 229 W.Va. 13, 725 S.E.2d 182 (2011) ("West Virginia Code § 48–9–401(a) (2009) permits a court to modify a parenting plan order on the basis of a

---

[6] Respondent Mother did not file a response to this motion.

[7] The circuit court denied Petitioner Father's request for a hearing

[8] It does not appear that the circuit court ruled on Petitioner Father's Rule 60(b) motion.

substantial change in circumstance that arises after the parenting plan order is entered if such change was not provided for in the parenting plan and modification is necessary to serve the best interests of the child.") Petitioner Father argues that he relied upon Respondent Mother's representation that she was to be married in March of 2013 when he agreed to the parenting plan entered by the circuit court on February 12, 2013. He further argues that Respondent Mother failed to satisfy the provisions of West Virginia Code § 48-9-403(d)(1), which sets forth legitimate purposes for which a custodial parent may relocate with the child;[9] that the best interests of T.M. were not properly considered; and that his ability to parent T.M. has been significantly impaired as a result of her relocation ten hours away. *See* W.Va. Code § 48-9-102(a) (setting forth primary objective of article involving allocation of custodial and decision making responsibilities of children as "serv[ing] the child's best interests, by facilitating[,]" inter alia, "(1) [s]tability of the child; . . . (3) [c]ontinuity of existing parent-child attachments; . . . [and] (4) [m]eaningful contact between a child and each parent. . . .").

In reviewing the circuit court's order and record on appeal, we find no clear error or abuse of discretion. Notwithstanding Petitioner Father's argument to the contrary, Respondent Mother's request to relocate was not based primarily upon Respondent Mother's marriage to her fiancé in March of 2013.[10] As both the family court and circuit court determined, Respondent

_____

[9] West Virginia Code § 49-8-403(d)(1) provides:

(d) When the relocation constituting changed circumstances under subsection (a) of this section renders it impractical to maintain the same proportion of custodial responsibility as that being exercised by each parent, the court shall modify the parenting plan in accordance with the child's best interests and in accordance with the following principles:

(1) A parent who has been exercising a significant majority of the custodial responsibility for the child should be allowed to relocate with the child so long as that parent shows that the relocation is in good faith for a legitimate purpose and to a location that is reasonable in light of the purpose. The percentage of custodial responsibility that constitutes a significant majority of custodial responsibility is seventy percent or more. A relocation is for a legitimate purpose if it is to be close to significant family or other support networks, for significant health reasons, to protect the safety of the child or another member of the child's household from significant risk of harm, to pursue a significant employment or educational opportunity or to be with one's spouse who is established, or who is pursuing a significant employment or educational opportunity, in another location. The relocating parent has the burden of proving of the legitimacy of any other purpose. A move with a legitimate purpose is reasonable unless its purpose is shown to be substantially achievable without moving or by moving to a location that is substantially less disruptive of the other parent's relationship to the child.

[10] In her brief to this court, the guardian stated that "[t]he undersigned did not cite the mother's marriage as a determining factor when recommending the court grant the relocation. It was not the undersigned's understanding that the parties' parenting agreement hinged on the

Mother's fiancé—with whom she has been in a long-term relationship and who received a substantial promotion at work with attendant increases in pay and benefits—provided continuing stability for Respondent Mother and T.M. and was a significant support network. The family court further determined that, based upon her testimony, Respondent Mother proved by a preponderance of the evidence that, as compared with Charleston, there are more jobs available to her in Milwaukee, Wisconsin, in her chosen profession with hours conducive to parenting T.M. We note further that both the family and circuit courts incorporated by reference the guardian's report, which opined that it was in T.M.'s best interest to remain with Respondent Mother as the primary residential custodial parent and to allow relocation. *See* W.Va. Code § 48-9-403(d)(1). Given these findings, and under the specific facts of this case, the failure of Respondent Mother and her fiancé to marry in March 2013 does not constitute a substantial change of circumstances such that a modification in the parenting plan is warranted. *See* W.Va. Code § 48-9-401.[11]

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 13, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

mother's marriage."

[11] Petitioner Father also argues that, in affirming the family court's order, the circuit court erroneously stated that Petitioner Father was afforded the opportunity to present evidence at a family court hearing on his motion for the return of T.M. and for modification of the parenting plan and custody. He argues that, in fact, no such hearing occurred and, further, that his request for a hearing should have been granted so that he could have presented evidence of a substantial change in circumstances based upon Respondent Mother's failure to marry her fiancé in March of 2013. We disagree. As previously established, the family court made clear that Respondent Mother's request for relocation was for the good faith and legitimate purposes of being with her fiancé, who was found to be a significant support network, and to pursue employment opportunities in her field more conducive to raising T.M. *See* W.Va. Code § 48-9-403(d)(1). Therefore, we find no clear error or abuse of discretion in this regard.