# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**John M.,**
**Petitioner Below, Petitioner**

**vs) No. 15-0656** (Kanawha County 00-D-1154)

**Stephanie M.,**
**Respondent Below, Respondent**

**FILED**

**June 3, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In this post-divorce action, Petitioner John M.[1] ("husband"), by counsel Stephen L. Gaylock, appeals the order of the Circuit Court of Kanawha County, entered June 4, 2015, that affirmed, in part, and reversed, in part, the final order of the Family Court of Kanawha County, entered May 20, 2015. Respondent Stephanie M. ("wife"), by counsel Richard L. Vital, filed a response in support of the circuit court's order. Husband filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married on April 25, 1981; three children were born of the marriage. The parties separated on May 22, 2000. Thereafter, a divorce action was filed. On February 5, 2001, the family court entered a temporary order that awarded wife custody of the parties' children, child support, and temporary alimony. Husband responded with a motion to reconsider on the ground that his financial condition made it impossible for him to meet the obligations set out in the temporary order. Wife also filed various motions.

On February 16, 2001, the family court held a hearing on all outstanding motions. By order entered February 22, 2001, the family court found that wife had withdrawn $58,000 from a line of credit that was in both parties' names and secured by the marital home; that she had expended $23,000 of the $58,000; that she was to use $15,000 for "interim fees and costs" and $6,000 for "family and household" support for March through June of 2001; and that the remaining $14,000 was to be returned to the bank. The court also ordered that, *on a temporary basis*, each party was to pay half of the monthly payment on the line of credit debt. The family

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

court based the order upon a review of the parties' finances and the fact that wife did not work outside the home. This temporary order is the family court's only pronouncement regarding the line of credit debt during the lengthy pendency of this case.

In 2002, while the divorce was pending, wife and the parties' youngest child moved to the State of New York, with the approval of husband and the family court. Wife bought a home in New York and obtained employment.

The parties were divorced by final order entered November 24, 2003, upon a finding of irreconcilable differences. In accordance with the parties' settlement agreement, the order provided (1) that husband agreed to pay wife permanent alimony in the amount determined by the family court, (2) that, in consideration of wife's "age, income and expenses and the cost of living in New York, and [husband's] age, income, and debt load," wife's monthly permanent alimony award would be $2,500 per month; (3) that wife agreed to waive any interest in the marital home and husband's business; and (4) that husband assumed all outstanding marital indebtedness which did not include "any debts incurred by the parties subsequent to the date of their separation." The order also provided that "[a]ny and all debts incurred individually . . . after the date of separation shall be the responsibility of the person making such debt." The final divorce order did not mention the line of credit debt. Neither party appealed the 2003 final divorce order to this Court.

In 2005, the parties' youngest child returned to West Virginia to live with her father. The family court entered an order reflecting that change on November 23, 2005. However, in 2007, the youngest child returned to New York to again reside with her mother. Wife thereafter filed a family court action in New York that apparently sought to enforce the provisions of the parties' final divorce order. A hearing was held in New York in May of 2007. Husband claims that (1) the New York action was wrongfully filed given that West Virginia retained jurisdiction over the child; and (2) he was required to hire counsel to appear on his behalf at that New York hearing. Wife later agreed to dismiss the New York action.

Also in 2007, husband filed a petition to modify custody, a petition for declaratory relief, and a contempt petition against wife. In his contempt petition, husband—for the first time since the entry of the parties' 2003 final divorce order—sought to have wife pay the line of credit debt.[2] Following a May 14, 2007, hearing, the family court, by order entered June 1, 2007, ruled that West Virginia had exclusive jurisdiction over the case and granted wife custody of the youngest child. The remaining matters were disposed via an agreement between the parties which was memorialized in a September 24, 2007, order. That order dismissed husband's contempt petition "without prejudice." Neither the June 1, 2007, nor the September 24, 2007, order mentions the line of credit debt. Neither party appealed these orders.

The next seven years passed without any activity in this case. Then, in 2014, eleven years after the entry of the final divorce order, husband claims he first learned that, while the divorce

---

[2] Although husband's contempt petition is not included in the record on appeal, wife admits husband's claim that he sought relief regarding the line of credit debt in his contempt petition.

was pending (from 2000 to 2003), wife approached persons she perceived to be husband's enemies and told them that husband had abused two of the parties' children when they were young. Husband claims that wife also told two of the parties' children and members of his church about the alleged abuse.

In response, on May 1, 2014, husband filed a motion pursuant to Rule 60(b)(6) of the West Virginia Rules of Civil Procedure that sought to terminate wife's permanent alimony award and/or to modify it back to the date of the 2003 final divorce order. Husband also sought relief with regard to the line of credit debt, which he claimed was owed by wife as a post-separation debt and was still unpaid. Husband averred that he had paid $35,000 in interest on that debt between 2001 and 2014 and that wife had wrongfully converted about $20,000 which was to be used to pay college tuition for the two younger children. Husband asserted that, as a result, he had to pay the children's college costs. Lastly, husband claimed that wife's New York action was fraudulently filed; that he was forced to hire an attorney to defend against that action at a cost of $8,500; and that wife had not reimbursed him for those attorney's fees.

At the family court hearings on husband's petition, husband's accountant testified that husband's average income from 1999 through 2001 (upon which wife's alimony award was based) was 30% greater than his 2013 income and 67% greater than his expected 2014 income.

By order entered October 24, 2014, the family court found that husband's income had diminished and his business's income was "in a decline that may not be recoverable," while wife's income had increased. Based on that finding, the family court reduced wife's monthly permanent alimony award from $2,500 to $1,000 per month. However, the family court declined husband's motion to terminate wife's permanent alimony award or to modify that award back to the date of the 2003 final divorce order. With regard to the line of credit debt, the family court noted that the issue had been pending for fourteen years, that the issue was not set out in the final divorce order, and that husband had assumed the debt in the parties' equitable distribution agreement which was set out in the final divorce order. As for the $20,000 for the younger two children's college expenses, the family court denied relief and found that the "college fund" was established and funded by wife's family inheritance and in her name only and that college expenses are not a legal obligation under West Virginia law. With regard to the New York case, the family court granted husband a $4,500 attorney's fee award on the ground that husband incurred $8,500 in attorney's fees and that wife admitted her filing of the New York action was "improper."

Husband appealed the family court's order to the circuit court, which held a hearing on the matter on April 23, 2015. By order entered April 29, 2015, the circuit court remanded the case to the family court for clarification of its October 24, 2014, order.

The family court responded with a May 20, 2015, order that included various exhibits and the following additional findings of fact: With regard to the line of credit debt, the family court found that, at the time that debt was incurred, wife was in a "significantly inferior position" to husband and took on the debt "out of desperation." The family court also noted that husband was advised of the debt at the time; that he had paid on the indebtedness for ten or more years; that if he believed the line of credit debt was not part of his assumption of the marital debt, he should

have "swiftly" brought the issue before the court; and that wife gave up all interest in the marital home and husband's business as consideration for husband's assumption of all debts that included the line of credit debt.

With regard to the children's college fund, the family court found that wife used the funds to help purchase a home in New York for herself and her youngest child, and if husband was relying upon the fund, he should have so noted this fact in the 2003 final divorce order that memorialized the parties' settlement agreement. The family court further found that, under West Virginia law, the payment of a child's college costs is voluntary, and that no contractual obligation regarding college expenses was set forth in the 2003 final divorce order.

The family court made no new findings with regard to the portion of its original order that required wife to pay husband $4,500 in attorney's fees.

By order entered June 8, 2015, the circuit court found that many of the "factual representations" in this case were "not factual," but, instead, had been repeated so many times during the lengthy pendency of this case that new counsel and the various judges who had heard it assumed that those representations were "fact" without ever substantiating them with the record. Following extensive efforts to reconstruct a complete and accurate record from all of the filings found in the circuit clerk's office, the circuit court reversed the family court order with regard to the decrease in wife's alimony award and husband's attorney's fees award, but affirmed the family court order with regard to the "college fund" and the line of credit debt. Husband now appeals the circuit court's order.

We review such appeals under the following standard:

> "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law de novo." Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

*Mayle v. Mayle*, 229 W.Va. 179, 181, 727 S.E.2d 855, 857 (2012).

Husband raises four assignments of error on appeal. Husband first argues that both the family court and the circuit court erred in finding that he "assumed" the line of credit debt. Husband highlights that the 2003 final divorce order specifically states that husband would assume only "outstanding *marital* indebtedness." (Emphasis added.) Thus, husband argues that because wife borrowed from the parties' line of credit *after* they had separated, wife was solely responsible for the line of credit debt. Alternatively, husband argues that because the line of credit debt is mentioned only in the 2001 temporary order (that required each party to temporarily make half of the monthly payment on the line of credit debt), that order is still in effect and, therefore, wife is liable for half of that debt.

4

Wife counters that husband clearly assumed the line of credit debt as part of the parties' separation agreement, which was memorialized in the 2003 final divorce order. Wife also points to an April 24, 2003, letter sent to the family court by a mediator who attempted settlement negotiations below. In that letter, the mediator found (1) that the parties' marital residence was "now solely in [husband's] name"; (2) that husband had "assumed" the first and second mortgages on the marital residence creating "a zero net asset"; and (3) that husband had "rolled other debt into the current mortgage." Finally, wife argues that husband assumed the line of credit debt given that it was part of the mortgages he voluntarily accepted in exchange for wife's agreement to give up any interest in the marital home and husband's business.

In the order on appeal, the circuit court cites to the following findings made by the family court with regard to the line of credit debt. First, wife borrowed the money from the parties' line of credit "out of desperation" when she was in a "significantly inferior income position." Second, the line of credit debt has not been addressed in any order since the 2001 temporary family court order. Third, although husband raised the line of credit debt in his 2007 contempt petition, in 2008, he consented to the entry of an agreed order which did not address that debt. Fourth, since the entry of the parties' 2003 final divorce order, husband alone has made payments on the line of credit debt. Fifth, the line of credit debt was a "marital debt" which husband assumed when he received the marital home as part of the parties' settlement agreement. Based on these findings, the circuit court concluded that "it was hard-pressed to find that the [f]amily [c]ourt committed error when it found that [husband] 'assumed the debt.'"

We agree with both the family court's and the circuit court's findings. Since 2003, husband has failed to raise, in any significant manner, the issue of the line of credit debt. For example, husband did not appeal either the 2003 final divorce order or the 2007 order that resolved his contempt petition against wife, nor did he request any further relief with regard to the line of credit until 2014, when he filed the instant action. Further, husband's payments on the line of credit debt since 2003 strongly supports the family court and circuit court's findings that husband assumed the line of credit debt as part of the parties' marital debt. On this record, we cannot say that the circuit court clearly erred in concurring with the family court's findings that husband assumed the line of credit debt.

Husband next argues that both the family court and the circuit court erred in refusing to terminate wife's permanent alimony award pursuant to Rule 60(b)(6) of the West Virginia Rules of Civil Procedure given that wife attempted to destroy his character and undermine his business. Husband claims that he never would have agreed to pay wife alimony in 2003 had he known about wife's allegations of abuse. In response, wife denies that she accused husband of abuse, but argues that even if she had made such accusations, they would be irrelevant to the issue of whether an alimony award was proper in this case. Both parties admit that they agreed in 2003 that wife should receive permanent alimony. Thereafter, the family court found that alimony was proper and set the amount at $2,500 per month based on the parties' incomes and their property settlement agreement.

With regard to this assignment of error, the circuit court found that husband's claims regarding wife's alleged statements have no basis or relevancy to the determination of whether alimony should have been awarded in this case.

5

We review husband's claim under the following standard:

> "A motion to vacate a judgment made pursuant to Rule 60(b), W.Va. R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syl. pt. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

Syl. Pt. 1, *Fernandez v. Fernandez*, 218 W.Va. 340, 624 S.E.2d 777 (2005).

As the circuit court correctly found, even if wife did make the statements husband alleges, they are not relevant to the factors a family court must consider in awarding alimony/spousal support. Those factors, found in West Virginia Code § 48-6-301, regard issues related to the length of the marriage, the education and abilities of the parties, their income and other financial factors, the distribution of the marital estate, and the care and maintenance of the parties' minor children. Given that allegations of abuse are not included among these factors, we cannot say that the circuit court abused its discretion in affirming the family court's denial of husband's Rule 60(b)(6) motion.

Husband's third assignment of error is that the circuit court erred in reversing the family court's $1,500 per month reduction of husband's alimony payment and reinstating the original award of $2,500 per month. Husband highlights that his accountant testified at the hearing about his finances and presented bar graphs that tracked husband's decreasing income. Wife counters that husband no longer pays child support, which saves him more than $900 a month; that he is financially more secure than wife; that the cost of living in New York is much higher than that in West Virginia; and that she has reached her potential earning cap.

In the order on appeal, the circuit court found as follows: First, husband's bar graphs reveal that husband's gross estimated business revenue for 2014 ($401,879) was significantly higher than husband's average gross business revenue at the time wife's alimony award was calculated in 2003 ($271,206). Second, husband's business's net earnings changed by less than $9,000 between 2003 and 2013. Third, husband's alimony payment had not increased since 2003, yet his average net shareholder earnings had "soared to over $372,000." Finally, the circuit court found that although wife's income had increased by about fifty-three percent since 2003 (from about $48,000 to about $76,000 per annum), that increase in wife's income alone could not support a sixty-percent reduction in wife's alimony given the data presented by husband. Therefore, the circuit court concluded (1) that it was error for the family court to modify wife's alimony award absent the parties' actual tax returns; and (2) the family court's reduction of alimony was based on mere "assumptions and assertions and not the actual facts regarding income in 2014."

We review such assignments of error under the following standard:

> "Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal

6

unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

Syl. Pt. 2, *Lambert v. Miller*, 178 W.Va. 224, 225, 358 S.E.2d 785, 786 (1987). Furthermore,

> We have stated that "the primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances." *Zirkle v. Zirkle*, 172 W.Va. 211, 217, 304 S.E.2d 664, 671 (1983). We have placed the burden of showing a substantial change of circumstances on the party petitioning for modification of the alimony award. Syllabus Point 3, *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987). To determine if there has been a substantial change of circumstances, the circuit court must "consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding." Syllabus Point 2, in part, *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982).

*Adkins v. Adkins*, 208 W.Va. 364, 367, 540 S.E.2d 581, 584 (2000).

Here, husband failed to produce the necessary tax returns in support of his motion to reduce wife's alimony award. Further, husband's own exhibits indicated that his income had either minimally decreased, or, under some measures, had actually increased. Thus, we concur with the circuit court's findings that husband failed to carry the burden of proof on his motion to reduce wife's alimony award. Hence, we find that the circuit court did not abuse its discretion in reversing the family court's sixty-percent deduction of wife's alimony award.

Husband's fourth and final assignment is that the circuit court erred in reversing the family court's award of $4,500 for his New York attorney's fees. Husband argues that the award was not erroneous given that wife admitted below that her filing of the New York action was filed in bad faith. Husband also claims that he proved he retained New York counsel when he twice testified under oath at a May 14, 2007, family court hearing that he had paid his New York counsel $8,500.

With regard to the family court's award of attorney's fees, the circuit court found that wife's 2007 New York action was not intended to harass husband and was not brought in bad faith given that (1) husband was not making his child support and alimony payments to wife; (2) wife agreed to withdraw the action as soon as she received payment from husband; and (3) wife's action was brought "out of desperation" due to her "significantly inferior income position." The circuit court also found (1) that husband asserted in 2014 that he had incurred $8,500 in attorney's fees in defending against wife's New York action, yet, in 2007, husband testified that he had only incurred $6,000 in such fees; and (2) that there was not a "scintilla" of documentary evidence in the record that husband had incurred any attorney's fees even though the family court had requested such documentary evidence in 2007. Finally, the circuit court noted that the family court failed to make the requisite findings with regard to an award of attorney's pursuant to Syllabus Point 3, in part, of *Mayle*, which provides:

7

"In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request." Syl. pt. 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

229 W.Va. at 181, 727 S.E.2d at 857.

As the circuit court noted, there is no documentary evidence in the record on appeal showing that husband incurred $8,500 in attorney's fees in defending against wife's New York filing. Further, the record on appeal contains sufficient evidence to support the circuit court's finding that wife did not bring the New York action in bad faith or for oppressive reasons. *See* Syl. Pt. 3, *Sally-Mike Properties v. Yokum*, 179 W.Va. 48, 49, 365 S.E.2d 246, 247 (1986) (stating that "[t]here is authority in equity to award the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons."). Hence, we cannot say that the circuit court clearly erred in finding that wife did not bring the New York action in bad faith, or in reversing the family court's $4,500 attorney's fees award to husband.

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Brent D. Benjamin
Justice Allen H. Loughry II

**DISQUALIFIED:**
Justice Robin Jean Davis
Justice Margaret L. Workman