IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

No. 14-0429

**FILED**

**April 10, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CAROL ELAINE WARREN,
Respondent Below, Petitioner

v.

TODD E. GARLAND,
Petitioner Below, Respondent

Appeal from the Circuit Court of Webster County
Honorable Jack Alsop, Judge
Civil Action No. 12-D-60

REVERSED AND REMANDED WITH DIRECTIONS

Submitted: March 10, 2015
Filed: April 10, 2015

Brittany Ranson Stonestreet, Esq.
Lyne Ranson Law Offices, PLLC
Charleston, West Virginia
Attorney for Carol Elaine Warren

James Wilson Douglas, Esq.
Jared S. Frame, Esq.
James Wilson Douglas, LC
Sutton, West Virginia
Attorneys for Todd E. Garland

JUSTICE LOUGHRY delivered the Opinion of the Court.
CHIEF JUSTICE WORKMAN concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard.  We review questions of law *de novo*."  Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2.      "Under the clearly erroneous standard, if the findings of fact and the inferences drawn by a family [court judge] are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences."  Syl. Pt. 3, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995).

LOUGHRY, Justice:

The petitioner and respondent below, Carol Elaine Warren, appeals an order of the Circuit Court of Webster County reversing a decision of the Family Court of Webster County concerning the amount and duration of spousal support she was awarded in her divorce from the respondent and petitioner below, Todd E. Garland. In this appeal, Ms. Warren contends that the circuit court erred by finding that a future increase in her spousal support award was impermissible and that such award should terminate in three years. Upon consideration of the parties' briefs and oral arguments, the submitted record, and the pertinent authorities, we find that the circuit court erred in modifying the spousal support award granted to Ms. Warren by the family court. Accordingly, the final order is reversed, and this case is remanded with directions that the family court order be reinstated.

## I. Factual and Procedural Background

The parties were married on February 14, 1984, and they separated on February 17, 2012, after twenty-eight years of marriage.[1] At the time of the parties' divorce, Mr. Garland was fifty-one years old and Ms. Warren was sixty-two years old. After the parties separated, Ms. Warren's mental health began to deteriorate due solely to the fact that her long term marriage was ending. Suffering from severe depression, Ms. Warren began to have

---

[1]The parties had no children together. They jointly raised Ms. Warren's daughter from her previous marriage from the ages of six to fifteen when she left their household.

1

suicidal ideation. As a result, she was admitted to a psychiatric hospital on three separate occasions between April 2012 and August 2012. Because of her depression, Ms. Warren was unable to continue her employment with the Ohio Valley Environmental Coalition where she worked as a project coordinator and lobbyist. She voluntarily elected to collect early social security benefits at age sixty-two.[2]

Mr. Garland filed a petition for divorce on June 21, 2012. At a temporary hearing on September 20, 2012, Mr. Garland was ordered to pay Ms. Warren spousal support in the amount of $350.00 per month beginning October 1, 2012. Subsequently, on January 24, 2013, a bifurcated divorce order was entered that incorporated the parties' agreement on all issues except for spousal support and attorney's fees. The parties agreed to a distribution of their marital assets that was close to "fifty-fifty," with Mr. Garland assuming sixty to sixty-five percent of the marital debt and being compensated as a result with a greater share of the marital property, including the debt-free marital home and retirement benefits.

The main source of contention between the parties was the spousal support sought by Ms. Warren. Mr. Garland argued that Ms. Warren should return to work as she had retired a few years prematurely at the age of sixty-two. When Ms. Warren was employed, her monthly net income was approximately $2,350.00. Her income was reduced

---

[2]Ms. Warren has not been determined to be disabled by any government entity.

to $888.00 per month when she began collecting her social security benefits. Ms. Warren submitted evidence reflecting monthly expenses averaging $2,662.58, although this amount did not include the estimated cost of health insurance that she needed to obtain following the divorce and her retirement. Mr. Garland, who is employed as Director of the Department of Social Ministries for the Archdiocese of Wheeling-Charleston, reported a monthly net income of $3,250.00. His monthly expenses were estimated to be $2,740.00. His biggest expense was his monthly payment on the marital credit card debt, which he assumed, in the amount of $750.00. Mr. Garland testified that the required monthly payment on the credit card debt was only $250.00, but he was voluntarily paying an extra $500.00 each month in order to reduce the balance as quickly as possible.[3]

At the final evidentiary hearing in early 2013, Ms. Warren called her treating psychologist, Dr. Lisa Ryan, and former boss, Janet Keating, as witnesses. Dr. Ryan testified that Ms. Warren had been diagnosed with major depressive disorder and was unable to return to work because of her mental health issues. She further testified that the stress of a job was too much for Ms. Warren to cope with at that time. Ms. Keating testified that she began noticing physical and emotional changes in Ms. Warren when the parties separated. She also stated that she could not rehire Ms. Warren as she had employed someone else in her

---

[3]The evidence in the record indicates that the credit card balance was almost $9,000.00 at the time the parties separated.

position.  Finally, based on her own observations, Ms. Keating opined that  Ms. Warren was not mentally able to return to work.

On March 5, 2013, the family court entered an order awarding spousal support to Ms. Warren in the amount of $350.00 per month until she reaches the age of sixty-five. The court further ordered:

> When [Ms. Warren] reaches age 65, a time at which the parties could have reasonably anticipated that she would retire in any event, the alimony should increase because at that time [Mr. Garland] will reasonably be anticipated to have reduced his monthly indebtedness assumed in the equitable distribution herein.  In addition, he will have retired the award of attorney's fees set forth below.  The combination of the retirement of debt and attorney's fees increases [Mr. Garland's] excess net income from which an enhanced award of alimony can be made, particularly at a time when [Ms. Warren's] income will only be Social Security benefits.  At age 65, alimony should increase to $650.00 per month, and it should continue until [Mr. Garland] reaches his normal retirement age of 67, at which time alimony should terminate.[4] (footnote supplied)

With respect to the attorney's fees requested by Ms. Warren, the family court ordered Mr. Garland to pay her attorney $3,600.00 at the rate of $100.00 a month until the amount was paid in full.  In awarding this amount, the court considered Mr. Garland's ability

---

[4]The order also provided that the spousal support would terminate sooner if Ms. Warren remarried, died, or became "involved in a relationship akin to marriage without the formal recognition thereof."

4

to pay in light of the spousal support granted to Ms. Warren, as well as the disparity in the parties' incomes and the fact that the only issue litigated was spousal support. Following entry of this order, Mr. Garland appealed the decision to the Circuit Court of Webster County.

On July 11, 2013, the circuit court entered an order reversing the decision of the family court. The circuit court concluded that the increase of the spousal support award to $650.00 per month when Ms. Warren turned sixty-five was improper pursuant to this Court's decision in *Mayle v. Mayle*, 229 W. Va. 179, 727 S.E.2d 855 (2012), because it was solely based on speculation that Mr. Garland would have more income available at that time. The circuit court further stated:

> [E]ven more perplexing is the finding of the Family Court that even though [Ms. Warren] will have reduced her medical expenses once she is eligible for Medicare, [Mr. Garland's] spousal support obligation still almost doubles (from $350.00/month to $650.00/month) when [Ms. Warren] reaches the age of 65. In short, there is no correlative findings, however speculative, about the need of [Ms. Warren] when she turns 65 years of age, nor is there any finding regarding her potential income, if any, at that point in time, as well.

The circuit court also found that the increase in Mr. Garland's spousal support obligation when Ms. Warren reaches the age of sixty-five, was as arbitrary and capricious as the termination of that obligation when he reaches the age of sixty-seven. The circuit court concluded that the future increase in the amount of the spousal support was a "preemptive

modification without sufficient evidence" and set aside the award effective the first day of the month following Ms. Warren's sixty-fifth birthday.

As to the award of attorney's fees, the circuit court found that the family court had failed to consider all of the factors required by this Court's decision in *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).[5] Thus, the circuit court set aside the attorney's fees award and remanded the case to the family court to complete the analysis required by *Banker*. On October 7, 2013, the family court entered an order that once again granted an attorney's fees award of $3,600.00 to be paid by Mr. Garland under the same terms set forth in the previous order but included an analysis of all of the *Banker* factors as directed by the circuit court. On March 26, 2014, the circuit court entered its final order which stated that all issues had been resolved, and the matter was now mature for consideration by this Court. Thereafter, Ms. Warren filed her appeal.

---

[5]Syllabus point four of *Banker* provides, in pertinent, part,

> In determining whether to award attorney's fees, the family [court judge] should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

*Id.*, 196 W.Va. at 538, 474 S.E.2d at 468.

## II.  Standard of Review

Our standard of review for matters arising in divorce cases is well established. We held in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard.  We review questions of law *de novo*.

With this standard in mind, we consider the parties' arguments.

## III.  Discussion

Ms. Warren challenges the circuit court's decision with respect to the amount and duration of her spousal support award.[6]   She contends that the circuit court erred in finding that the prospective increase in her spousal support was based on mere speculation regarding Mr. Garland's future ability to pay and, as such, was a preemptive modification without sufficient evidence, as proscribed by *Mayle*.  She argues that *Mayle* does not apply in this instance because the increase in the spousal support award was based on concrete evidence and foreseeable events that would substantially reduce Mr. Garland's monthly indebtedness and, in turn, increase his ability to pay.  In particular, Ms. Warren submits that the family court properly relied upon the fact that within three years, Mr. Garland will have

---

[6]The award of attorney's fees is not an issue in this appeal.

7

paid off, or least substantially reduced, the marital credit card debt and the attorney's fees award. As a result, more money will be available to him to pay the increased spousal support award. She further argues that the circuit court abused its discretion by terminating the spousal support award after three years without making specific findings to support that decision.

Conversely, Mr. Garland contends that the circuit court did not err in reversing the family court's decision with respect to the amount and duration of the spousal support award because it was based on speculation regarding the respective financial standings of the parties. While Mr. Garland acknowledges that he will have paid off certain debts in three years, he argues that it was error for the family court to assume that he will be in a better financial position at that time. In that regard, he points out that he could be laid off from work or develop a medical condition which would have an impact on his ability to pay the increased spousal support award. Therefore, he maintains it is error to modify a spousal award based on future events that may or may not occur as this Court previously recognized in *Mayle*.

In *Mayle*, the petitioner wife had worked during the parties' early married years while the respondent husband attended medical school. At the time of the divorce, the wife had been a full-time homemaker and caretaker for the parties' children for several years and

8

the husband, a practicing ophthalmologist, was generating a yearly income in excess of $300,000.00. Finding that the wife was entitled to permanent spousal support because of the length of the marriage and the respective financial circumstances and needs of the parties, the family court granted an award of $5,500 per month for ten years, after which the amount would be reduced to $1,500.00 per month. In considering the wife's challenge to the prospective reduction of spousal support, this Court found that the family court's decision to reduce the award after ten years was based on pure conjecture that the wife would return to her hometown and assume a greater role in the operation of her family's business. We noted there was no testimony or other evidence elicited during the proceedings below that supported the family court's speculation about the wife's future actions. While recognizing that there could be a reason for reducing a spousal support award after a specified period of time, this Court concluded in *Mayle* that there was simply no evidence to support such a time-based reduction in that case. *Id.*, 229 W.Va. at 185-86, 727 S.E.2d at 861-62.

Having reviewed the record, we find that the instant case is factually distinct from *Mayle* because there was sufficient evidence to support the family court's decision to increase the spousal support in three years. As noted by Ms. Warren, the family court based its decision to increase the spousal support award on the fact that Mr. Garland will have paid the attorney's fees award in full by that time and will have substantially reduced, if not eliminated, the marital credit card debt. Contrary to the finding of the circuit court, the

9

family court was not merely speculating that Mr. Garland will have paid the attorney's fees in three years. Because he was ordered to pay the $3,600.00 award at "the minimum rate of $100.00 per month until paid in full," Mr. Garland will have completely paid the fees before the spousal support award increases. In addition, Mr. Garland has acknowledeged that he will have eliminated some, if not all, of the marital credit card debt he assumed in the equitable distribution that was approved by the family court by that time because he has voluntarily undertaken an extra payment of $500.00 per month in an effort to pay off the debt as soon as possible. Importantly, Mr. Garland is not required to pay an additional $500.00 per month. The evidence indicates that the minimal credit card payment due is approximately $250.00. As such, he has an additional $500.00 of monthly disposable income at the present time but for the voluntarily increased credit card payment.

Moreover, Mr. Garland currently has $510.00 in net income above his current expenses, which include the $750.00 credit card payment. Therefore, the family court was not speculating when it concluded that Mr. Garland would have more income available to pay an enhanced spousal support award in three years as he already has a present ability to make the $650.00 spousal support payment. It is clear that the family court recognized the efforts Mr. Garland was making to reduce his indebtedness and, accordingly, delayed imposition of the increased spousal award to ease his burden in that regard. In sum, we find

that the family court had sufficient evidence upon which to base the prospective increase of the spousal support award,[7] and the circuit court erred in concluding otherwise.[8]

We further find that the circuit court erred by reducing the duration of the spousal support award to just three years. In reaching that decision, the circuit court simply concluded that the family court's decision to extend spousal support until Mr. Garland reached the age of sixty-seven was "arbitrary and capricious." The record, however does not support that conclusion. As Ms. Warren points outs, the family court made extensive findings pursuant to West Virginia Code § 48-6-301(b) (2014) in support of its determination regarding both the amount and duration of the spousal support award.

West Virginia Code § 48-6-301(b) sets forth a list of twenty factors that are to be considered in awarding spousal support.[9] The family court order clearly shows that

---

[7]In the event that Mr. Garland has a change of circumstances in the future, he can file a motion to modify the spousal support award. *See* W.Va. Code § 48-16-211 (2014) (conferring continuing exclusive jurisdiction on family court to modify spousal support order throughout existence of support obligation).

[8]The circuit court also found that Ms. Warren would not have a need for an increase in alimony in three years because at that time, she would be eligible for Medicare, which would reduce her health care costs. However, the record shows that the cost of health insurance was not included in Ms. Warren's submission of her monthly expenses as she had not obtained a policy at that juncture and, accordingly, it was not a factor in the family court's calculation of the appropriate amount of spousal support.

[9]West Virginia Code § 48-6-301(b) provides:

11

The court shall consider the following factors in determining the amount of spousal support, child support or separate maintenance, if any, to be ordered under the provisions of parts 5 [§§ 48-5-501 et seq.] and 6 [§§ 48-5-601 et seq.], article five of this chapter, as a supplement to or in lieu of the separation agreement:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable

consideration was given to all of the statutory factors. Ultimately, the family court determined that Ms. Warren was entitled to spousal support until Mr. Garland reaches the age of sixty-seven based on the length of the parties' marriage, the disparity in their incomes, Ms. Warren's health status in comparison to that of Mr. Garland,[10] and Ms. Warren's need to obtain health insurance. The order indicates that the spousal support award was not lessened nor increased because of the nearly equal equitable distribution of the parties' marital assets that was previously approved. With regard to the education factor, it was noted that both parties have college degrees and that neither had any plans to seek further education. In

> time by acquiring additional education or training;
> (11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
> (12) The anticipated expense of obtaining the education and training described in subdivision (10) above;
> (13) The costs of educating minor children;
> (14) The costs of providing health care for each of the parties and their minor children;
> (15) The tax consequences to each party;
> (16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;
> (17) The financial need of each party;
> (18) The legal obligations of each party to support himself or herself and to support any other person;
> (19) Costs and care associated with a minor or adult child's physical or mental disabilities; and
> (20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

[10]The family court did not assign any fault to Mr. Garland for Ms. Warren's mental health deterioration after the parties separated.

addition, both parties testified during the proceedings that they had jointly decided while they were married not to pursue additional educational opportunities because of their existing family and financial obligations. It was also noted that because the parties had no children together and neither would be taking care of any minor children, the factors that relate to child care or support were not relevant to the spousal support determination. Finally, the family court order indicates that no weight of any type was placed on the fault factor[11] in making the award because neither party proved any fault for the dissolution of their marriage.

Given the extensive findings made by the family court pursuant to West Virginia Code § 48-6-301(b), there was no basis for the circuit court to conclude that the family court's decision with respect to the amount and duration of the spousal support award was arbitrary and capricious. As we have explained, "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family [court judge] are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences." Syl. Pt. 3, *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 386, 465 S.E.2d 841 (1995). Accordingly, we

---

[11]*See* W.Va. Code § 48-8-104 (2014) (also requiring court to consider and compare fault or misconduct of either or both parties and effect of fault or misconduct as contributing factor to deterioration of marital relationship in determining whether to award spousal support and determining amount, if any, to be awarded).

find that the circuit court erred by setting aside and vacating the spousal support award effective the first day of the month following Ms. Warren's sixty-fifth birthday.

## IV. Conclusion

For the reasons set forth above, the final order of the Circuit Court of Webster County is reversed with respect to the award of spousal support, and this case is remanded for reinstatement of the March 5, 2013, order of the Family Court of Webster County with respect to the amount and duration of the spousal support award granted to Ms. Warren.

Reversed and remanded with directions.